UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CHRISTOPHER RODGERS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:24-cv-00986 |
| CITY OF HENDERSONVILLE, TENNESSEE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is the City of Hendersonville, Tennessee's ("City") Motion to Dismiss (Doc. No. 26) the Amended Complaint filed by Christoper Rodgers ("Rodgers") alleging disability discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131. Rodgers has responded in opposition (Doc. No. 29), and the City replied (Doc. No. 30). For the following reasons, the City's motion will be denied.

### I. FACTUAL ALLEGATIONS[1]

As a public entity, the City offers recreational services and facilities to the public. (Doc No. 22 at ¶¶ 5, 9 and 10). Rodgers is deaf, nevertheless he took advantage of the City's recreational services and facilities by participating in the City's youth baseball league as a volunteer coach. (Id. ¶¶ 8, 9, 10). Although the City did not provide "an American Sign Language Interpreter," he met all of the expectations as a coach, (id. ¶¶ 11, 12), by promoting player development, fostering

---

[1] The facts in this section are drawn from the Amended Complaint (Doc. No. 22) ("Amended Complaint") and are accepted as true for purposes of ruling on the instant motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint").

"league play," and developing strong relationships with the players. (Id. ¶ 12). However, after league members complained about Rodgers being deaf, (Id. ¶¶ 13, 14), the City removed him as coach because he is deaf and replaced him with a person who was not deaf. (Id. ¶ 18).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the Amended Complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020). "While the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions'" or "'a formulaic recitation of a cause of action's elements[.]'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). When determining whether the Amended Complaint meets this standard, the Court accepts the factual allegations as true, draws all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). A plaintiff's claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

The City moves to dismiss Rodgers' Title II claim because as a volunteer coach, Rodgers was not "excluded from participation in" the services, programs, and activities of the City. (Doc. No. 27 at 1, 7). The Court disagrees.

The ADA was "enacted [ ] in 1990 to remedy widespread discrimination against disabled individuals." PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001). It "is a broad mandate of

2

comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." Frame v. City of Arlington, 657 F.3d 215, 223 (2011). To do so, the ADA forbids discrimination against persons with disabilities in employment in Title I, 42 U.S.C. § 12112; in public services, programs, and activities in Title II, § 12132; and in public accommodations in Title III, § 12182. See Tennessee v. Lane, 541 U.S. 509, 517 (2004).

To encourage individuals with disabilities to participate in public recreational activities, Title II "forbid[s] discrimination against disabled individuals" in public services, programs, and activities. PGA Tour, Inc., 532 U.S. at 675. The statute declares that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is defined as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A qualified individual with a disability can bring "[t]wo types of claims . . . under Title II: claims for intentional discrimination and claims for a reasonable accommodation." Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Comm'rs., 870 F.3d 471, 488 (6th Cir. 2017). To survive a motion to dismiss, Rodgers must allege: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program because of his disability. Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015). Contrary to the City's arguments, Rodgers has sufficiently alleged a plausible Title II claim.

3

1. <u>Disability</u>

To begin, Rodgers has sufficiently alleged that he has a disability. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102(1). <u>MX Group, Inc. v. City of Covington</u>, 293 F.3d 326, 336 (6th Cir. 2002) (citing <u>Bragdon v. Abbott</u>, 524 U.S. 624, 632 (1998)). A "major life activity" includes but is not limited to "hearing." § 12102(2)(A); <u>see also</u> 29 C.F.R. § 1630.2(i). Rodgers alleges that he is deaf, which substantially limits the major life activity of hearing. <u>See</u> 29 C.F.R. § 1630.2(j)(3)(iii) ("[d]eafness substantially limits hearing"); <u>see also</u> <u>Milam v. ASCAP</u>, 2023 WL 5673953, at *6 (M.D. Tenn. Sept. 1, 2023) ("it may reasonably be inferred that the plaintiff's hearing loss, . . . substantially limits the plaintiff in the major life activity of hearing, "as compared to most people in the general population."). Rodgers has a disability under Title II.

2. <u>Qualified Individual with a Disability</u>

Rodgers also alleges he is a qualified individual with a disability under 42 U.S.C. § 12131(2). A disabled person is "qualified" under Title II if he "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity's programs," "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services. 42 U.S.C. § 12131(2); <u>Johnson v. Cleveland City Sch. Dist.</u>, 443 F. App'x 974, 983 (6th Cir. 2011). An individual's qualification to participate in recreational services offered by the City is not altered even if that individual needs "reasonable modifications, as long as it does not fundamentally alter the services offered by the City. <u>Lane</u>, 541 U.S. at 531–32.

Accepting Rodgers' allegations as true, he alleges that he participated in the youth baseball league by the City as a coach. He also alleges that he performed satisfactory as a coach. Specifically, as a coach, he engaged in player development and contributed to league play, without any modifications to the youth baseball league's rules, policies, . . . , or provision of auxiliary aids and services. 42 U.S.C. § 12131(2). Thus, Rodgers has alleged he is a qualified individual with a disability entitled to Title II's protections.

      3.      Excluded from Participation or Denied the Benefits

Finally, Rodgers alleges that he was excluded from participating in the youth baseball league as a coach and as a result denied the comradery of that sporting event. This only requires that Rodgers allege "unfavorable treatment on the basis of his disability." Finley v. Huss, 102 F.4th 789, 823 (6th Cir. 2024). Put simply, he must allege that the "defendant took action because of [his] disability." Anderson, 798 F.3d at 357; Tucker v. Tennessee, 539 F.3d 526, 533 (6th Cir. 2008) (holding that to make out a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must "establish[ ] that he or she was intentionally ... subjected to discrimination ... because of his or her disability") (emphasis original, internal quotation marks and brackets omitted); see also Dillery v. City of Sandusky, 398 F.3d 562, 568 (6th Cir. 2005) (rejecting a plaintiff's ADA claim for intentional discrimination because the plaintiff could not show that the defendants' actions were "because of her disability"). Indeed, Rodgers does so here by alleging he was removed as a volunteer coach because he is deaf and replaced by someone who is not. Thus, Rodgers has plausibly alleged a Title II claim.

Rather than squarely address these allegations, the City relies on non-binding precedent to argue that Rodgers' Title II claim fails because, as a volunteer, he assisted the City in provision of its services (i.e., input). (See Doc. No. 27 at 7). The Court disagrees with the City for three

reasons. First, his protection under Title II does not hinge on his volunteer status. There is nothing in 42 U.S.C. § 12132 that directly or indirectly suggest that the discriminatory prohibition to participate depends upon the voluntary or nonvoluntary status of the participant. Second, the cases the City cites are factually distinguishable as they arise in the context of the plaintiff/employee working for an agency of the government. Two of the cases involve "volunteer firefighters" who unsuccessfully brought Title I claims and then tried to reframe them under Title II. See Tawes v. Frankford Volunteer Fire Co., 2005 WL 83784, at *6–7 (D. Del. Jan. 13, 2005); Houston v. Twp. of Randolph, 934 F. Supp. 2d 711, 741 (D.N.J. 2013), while the third involved a city hall "volunteer worker" who unsuccessfully brought a Title II claim. Mirka v. Langley, 16 F. App'x 665, 666 (9th Cir. 2001). In this case, Rodgers is a participant in the City's youth baseball league and alleges he was denied the opportunity to participate due to his disability. Third, even if the Court applied the input theory in the cited cases, the Amended Complaint suggests that Rodgers did not help to provide the services through creation or planning of the league. Instead, he participated and enjoyed the benefits of the City's youth baseball league by coaching, satisfying the output component.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will deny the City's motion to dismiss (Doc. No. 26). An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE