UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CHRISTOPHER RODGERS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:24-cv-00986 |
| CITY OF HENDERSONVILLE, TENNESSEE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

"This case is about a deaf volunteer baseball coach, Christopher Rodgers," who claims that the City of Hendersonville, Tennessee ("City") removed him as a coach because of his disability, in violation of 42 U.S.C. § 12131 of Title II of the American with Disabilities Act ("Title II"). (Doc. No. 43). The City moves for summary judgment, arguing that Rodgers cannot present sufficient evidence of discrimination. (Doc. No. 38). Rodgers has responded in opposition, (Doc. No. 43) to which the City has replied. (Doc. No. 46). The motion is ripe for decision. For the reasons that follow, the Court concludes that Rodgers has failed to present sufficient admissible evidence on his failure to accommodate or intentional discrimination claims to warrant a trial. The Court will grant the City's motion.

### I. FACTUAL ALLEGATIONS

The material facts are undisputed, and even when considered most favorably to Rodgers, fail to support his Title II claims.

Rodgers applied to be and was accepted by the City as the head coach for the 5U-Tball Tigers team for the 2023 summer season. (Doc. No. 39-4). Orey Fugate, the City's Coordinator

for Athletics, made the decision to accept Rodgers as volunteer head coach. (Id.). Fugate states, and Rodgers does not dispute, that during the application, acceptance, qualification process and the first head coach meeting, Rodgers did not request and did not need any accommodation because he is deaf. (Doc. No. 44 ¶ 3). Specifically, he never requested the aid of an American Sign Language interpreter or any other accommodation by the City. (Id.). This is because Rodgers used a "voice-to-text" phone application and was able to read lips. (Doc. No. 39 at 3, 8, 15; Doc. No. 4-1 at 41; Doc. No. 44 at 1, 2).

During the 2023 summer baseball season, it is undisputed that "multiple parents and coaches requested not to be on Mr. Rodgers' team in the fall." (Doc. No. 44 at 4). Although Rodgers correctly notes that some parents and coaches did not reference him specifically by name, their emails did identify Rodgers' team specifically, 5U-Tball Tigers. (Doc. Nos. 39-15, 39-16, 39-17, 37-19). Indeed, Rodgers admits that "some parents complained about him." (Doc. No. 43 at 8). The complaints about Rodgers included issues about his coaching style (Doc. No. 39-19); his failure to pull the tee off of the plate for the other team (Doc. No. 44 ¶ 6); and sportsmanship (Doc. No. 40-1 at 53-54).

After receiving parents' and coaches' complaints about Rodgers as well as his complaints to the City about scheduling and rescheduling games and practice times, (Doc. No. 47 ¶¶ 24-25), the City removed Rodgers as the Tigers head coach. (Doc. No. 39-32 at 1). Fugate communicated the decision by email to Rodgers. (Id.). Fugate explained that the City's decision to remove Rodgers was because of Rodgers' "issues with our league operations so far this season and having received numerous complaints amongst other members of our program. . . ." (Id.). The City also invited Rodgers to apply for a coach position in future baseball seasons. (Id.; Doc. No. 44 ¶ 4).

## II.     LEGAL STANDARD

As this Court has observed in the context of a city employee challenging termination of employment, this Court is not a "super personnel department" empowered to "second-guess" the City's employment decisions. Larson v. City of Algood, Tennessee, 390 F. Supp 3d 874, 883 (M.D. Tenn. 2019). To the contrary, the only inquiry is whether there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's analysis starts with whether the movant has satisfied the initial burden of showing there are no genuine disputes of material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). If the movant does so, then the non-moving party has the burden of showing that the jury could find for the non-moving party or that there is a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

To determine if there is a dispute of material fact the Court employs several guides. One, the Court construes all factual inferences in favor of the nonmovant. Hamilton v. Gen. Elec. Co., 556 F.3d 428, 437 (6th Cir. 2009). Two, the nonmovant's evidence must be more than colorable, or a scintilla, but significantly probative such that a fair-minded jury could find for the Nonmovant. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249-52 (1986). Third, the nonmovant must show that there is evidence to require a jury decision on each claim challenged in the summary judgment motion. Hudson v. City of Highland Park, Michigan, 943 F.3d 792, 800 (6th Cir. 2019).

Under Title II, Rodgers can bring two types of claims, intentional discrimination or failure to accommodate. Roell v. Hamilton Cnty, Ohio/Hamilton Cnty. Bd. of Commissioners, 870 F.3d 471, 488 (6th Cir. 2017). He can prove either claim using direct or indirect evidence of discrimination, see Finley v. Huss, 102 F.4th 789, 820, 823 (6th Cir. 2024), to establish that the City took action or failed to take action because of his disability. Anderson v. City of Blue Ash,

798 F.3d 338, 357 (6th Cir. 2015). Specifically, Rodgers must prove that the City's animus toward him due to his disability was a "significant factor" in the City's decision against him. Id.

The Sixth Circuit has explained in the context of Title II what constitutes direct and indirect evidence of discrimination. "Direct evidence explains itself. It does not require the fact finder to make any inferences before concluding that unlawful discrimination happened." M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ., 1 F.4th 436, 452 (6th Cir. 2021) (citation and quotation marks omitted). The indirect method is analyzed under the McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973), burden-shifting paradigm. This requires the plaintiff to establish a prima facie case of discrimination by showing that (1) he is disabled; (2) he is otherwise qualified to participate in the public program; and (3) he was subjected to discrimination because of his disability. Gohl v. Livonia Pub School Dist., 836 F.3d 672, 682 (6th Cir. 2016). If the plaintiff makes out a prima facie case the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions, which then requires the plaintiff to prove that the Defendant's reason is a pretext for discrimination. Id. at 683. On summary judgment, this Court must find sufficient evidence to create a disputed fact issue at each stage to proceed to trial. Briggs v. Univ. of Cincinnati, 11 F.4th 498, 508 (6th Cir. 2021).

### III. ANALYSIS

Rodgers' failure to accommodate claim must be dismissed because he has failed to present evidence that he asked the City for an accommodation. The Sixth Circuit has repeatedly held that a Title II failure to accommodate claim is cognizable, despite any textual support in the statutory language. Bennett v. Hurley Medical Center, 86 F.4th 314, 326 (6th Cir. 2023). "Title II does not require a Plaintiff to receive her 'preferred' accommodation, but merely a reasonable one that provides 'meaningful access' to the public entity." Id. (quoting Knox Cnty., Tennessee v. M.Q.,

4

62 F.4th 978, 1001 (6th Cir. 2023); (Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 907 (6th Cir. 2004)). But a public entity is not liable for failure to accommodate if the employee does not request an accommodation. Marble v. Tennessee, 767 F. App'x. 647, 652 (6th Cir. 2019); see also Johnson v. Dobbins, No. 22-5310, 2022 WL 16824202, at *3 (6th Cir. Nov. 8, 2022) (the duty to accommodate "arises only where the entity is aware of the needed accommodation. Public officials, after all, are not clairvoyant, nor does Title II expect as much."); McPherson v. Mich High School Athletic Inc., 119 F.3d 453, 461 (6th Cir. 1997) (en banc) (same). It is undisputed that Rodgers never requested that the City "provide him with an ASL interpreter, or any other accommodation for his disability." (Doc. No. 44 ¶ 3). Rodgers' failure to accommodate claim does not survive summary judgment.

Rodgers' intentional discrimination claim arising from his removal as the Tigers head coach fails because Rodgers has failed to offer admissible evidence of discrimination due to his disability. Rodgers' reliance on direct evidence is misplaced because he fails to identify any such evidence. "The direct evidence standard essentially requires an admission in some form by the employer that it relied on the disability in making an employment decision." Coulson v. The Goodyear Tire & Rubber Co., 31 F. App'x 851, 855 (6th Cir. 2002). Rodgers offers no statements or documents from the City's decision makers or Fugate that Rodgers' disability was used to make the decision to remove him as head coach.

There is also insufficient indirect evidence of discrimination to save Rodgers' case. Applying the burden shifting McDonnell Douglas framework, Rodgers has the burden to establish a prima facie case of discrimination. There is no dispute that Rodgers has a disability and assuming he is otherwise qualified as a head coach, Rodgers fails to come forward with evidence that his removal was due to his disability. The parents' complaints may not be valid in Rodgers' eyes, but

5

none of their complaints reference or rely upon his disability. Likewise, the issues with league operations never reference his disability.

## IV. CONCLUSION

That Rodgers believes his removal was due to his disability is irrelevant because the City made the decision to remove him for other reasons. Rodgers has failed to come forward with evidence to establish a prima facie case of discrimination as is his burden on summary judgment. Therefore, his claims are dismissed and the Court will grant Defendant's motion.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE